FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA J.,[1]<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:21-cv-03167-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 12, 15** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 15. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 12, and denies Defendant's motion, ECF No. 15.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

404.1502(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

ORDER - 3

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 6, 2014, Plaintiff applied for Title II disability insurance

benefits alleging a disability onset date of October 13, 2014. Tr. 98, 197-204,

1196. The application was denied initially and on reconsideration. Tr. 129-35,

137-43. Plaintiff appeared before an administrative law judge (ALJ) on March 21,

2017. Tr. 36-97. On June 1, 2017, the ALJ denied Plaintiff's claim. Tr. 12-32.

Plaintiff appealed the denial, which resulted in a remand. Tr. 1278-1300. Plaintiff

appeared for a remand hearing on September 23, 2021. Tr. 1227-50. On October

20, 2021, the ALJ issued a partially favorable decision. Tr. 1193-1226. The ALJ

found Plaintiff was not disabled from the alleged onset date through January 24,

2019, but Plaintiff became disabled on January 25, 2019. Tr. 1213-14.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through December 31, 2019, has not

engaged in substantial gainful activity since October 13, 2014. Tr. 1199. At step

two, the ALJ found that Plaintiff has the following severe impairments: lumbar

degenerative disc disease; obstructive sleep apnea; osteoarthritis of the bilateral

knees, status post bilateral knee replacement; obesity; arthritis and bursitis of the

shoulders; bipolar disorder; and depressive disorder. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 1200. The ALJ then concluded that Plaintiff has the RFC to

perform light work with the following limitations:

> [Plaintiff] can lift and carry 10 pounds frequently and occasional[ly]; requires a sit/stand at will option in the workplace; can occasionally stoop and crouch; cannot crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds; can frequently reach, handle and finger; cannot perform work at heights, drive, or work in proximity to hazardous conditions; and is able to remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level one and two jobs.

Tr. 1203.

At step four, the ALJ found Plaintiff is unable to perform any of her past

relevant work. Tr. 1212. At step five, the ALJ found that prior to the established

onset date of January 25, 2019, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as electronics worker, small products assembler II, and marker. Tr. 1214.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from the alleged onset date of October 13, 2014, through

January 24, 2019, but Plaintiff became disabled on January 25, 2019. *Id.*

ORDER - 7

Per 20 C.F.R. § 404.984, the ALJ's decision following this Court's prior

remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act.  Plaintiff

raises the following issues for review:

1.  Whether the ALJ conducted a proper step-five analysis.

2.  Whether the ALJ properly evaluated the medical opinion evidence.

3.  Whether the ALJ conducted a proper step-two analysis; and

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 12 at 2.

## DISCUSSION

**A. Step Five**

Plaintiff contends the ALJ erred by failing to meet his burden at step five.

ECF No. 12 at 3-5.  At step five of the sequential evaluation analysis, the burden

shifts to the Commissioner to establish that 1) the claimant can perform other

work, and 2) such work "exists in significant numbers in the national economy."

20 C.F.R. §§ 404.1560(c)(2); *Beltran*, 700 F.3d at 389.  In assessing whether there

is work available, the ALJ must rely on complete hypotheticals posed to a

vocational expert.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The

ORDER - 8

ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

First, Plaintiff contends the vocational expert's testimony was based on an incomplete hypothetical. ECF No. 12 at 4. The RFC includes a limitation to "sit/stand at will." Tr. 1203. The ALJ did not include the limitation to "sit/stand at will" in the hypothetical posed to the vocational expert. Tr. 1245. Defendant does not address the issue. *See* ECF No. 15 at 19-20. The ALJ erred in relying on vocational expert testimony that was provided in response to an incomplete hypothetical.

Next, Plaintiff contends the ALJ erred in failing to resolve conflicts between the vocational expert's testimony and the dictionary of occupational titles (DOT). ECF No. 12 at 4. "When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency." *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (citing *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)). The ALJ has an affirmative duty to "ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is

ORDER - 9

1  reasonable' before relying on the expert's testimony to reach a disability

2  determination." *Rounds*, 807 F.3d at 1003.

3       The Selected Characteristics of Occupations is the companion publication to

4  the DOT.  U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in

5  the Revised Dictionary of Occupational Titles Appx. C (1993) (SCO).

6  Adjudicators must "identify and obtain a reasonable explanation for any conflicts

7  between occupational evidence provided by VEs or VSs and information in the

8  [DOT], including its companion publication, [SCO], and explain in the

9  determination or decision how any conflict that has been identified was resolved."

10 SSR 00-4P.

11      Light work typically involves lifting and carrying up to 20 pounds

12 occasionally and 10 pounds frequently.  20 C.F.R. § 404.1567; Tr. 1246.  The ALJ

13 limited Plaintiff to light work but also limited Plaintiff to lifting/carrying up to 10

14 pounds.  Tr. 1245.  The vocational expert gave three representative light jobs

15 Plaintiff could perform.  Tr. 1245.  The vocational expert testified that he deviated

16 from the DOT and relied on sources other than the DOT in forming his opinion as

17 to the "weight lifted in those particular jobs."  Tr. 1246.  The expert did not explain

18 what evidence he relied upon instead of the DOT.  The expert reduced the number

19 of available jobs by 50 percent and gave no explanation as to how he concluded the

20 number of jobs should be reduced by 50 percent.  *See* Tr. 1245-46.  The ALJ offers

ORDER - 10

no explanation regarding resolving the conflict between the DOT and the expert's testimony. *See* Tr. 1213-14. Defendant does not address this issue. *See* ECF No. 15 at 19-20.

Similarly, the ALJ limited Plaintiff to no work in proximity to hazardous conditions. Tr. 1203. One of the representative jobs, electronic worker, has occasional exposure to hazards. Additionally, the ALJ limited Plaintiff to frequent reaching, handling, and fingering, Tr. 1203, and the small products assembler II position requires constant reaching, handling, and fingering. The vocational expert did not acknowledge his deviations from the DOT and offered no explanation for the deviations. The ALJ erred in failing to resolve the conflict between the expert testimony and the DOT.

Lastly, Plaintiff contends the ALJ erred in finding Plaintiff was capable of light work, when she is limited to lifting 10 pounds and needs to sit/stand at will, among other limitations. ECF No. 12 at 5. Plaintiff contends the ALJ should have found Plaintiff is limited to sedentary work, and thus is disabled under the grid rules. *Id.* The Court finds the ALJ erred in rejecting Dr. Ghazi's opinion, as discussed *infra,* and Plaintiff should have been found disabled under the grid rules.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Darius Ghazi, M.D.; William Drenguis, M.D.; Gregory Sawyer, M.D., Ph.D.; Elise Sturgeon, Ph.D.; and LaRee Born, M.A.  ECF No. 12 at 14-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other independent evidence in the

record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Ghazi

Dr. Ghazi testified at the hearing and rendered an opinion on Plaintiff's

physical functioning. Tr.1233-39. Dr. Ghazi stated Plaintiff has been diagnosed

with degenerative disc disease; sleep apnea; osteoarthritis of the knees; morbid

obesity, arthritis, bursitis, and impediment of the shoulder joints. Tr. 1233-34. Dr.

Ghazi opined Plaintiff meets or functionally equals Listing 1.17. Tr. 1235-37,

1240. He further opined Plaintiff can sit for six hours; stand/walk no more than

two hours; carry 5 pounds frequently and 10 pounds occasionally; occasionally

reach overhead and frequently reach at or below the shoulder level; no stooping,

kneeling, climbing ropes/ladders/scaffolds, nor crawling; and walking up

ramps/stairs requires the use of a banister or rail. Tr. 1238-39. The ALJ gave Dr.

Ghazi's opinion little weight. Tr. 1209. An ALJ may only reject the opinion of a

non-examining physical by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

First, the ALJ found Dr. Ghazi did not provide sufficient support for his opinion. Tr. 1209. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Therefore, a medical opinion may be rejected by the ALJ if it is inadequately supported by medical findings. *Bray*, 554 F.3d at 1228. The ALJ found Dr. Ghazi did not cite to records to support the limitations he assessed, including the lifting and carrying limitations. Tr. 1209. The ALJ stated the lifting/carrying limitation was not supported by objective findings regarding the upper extremities. *Id.*

Dr. Ghazi testified Plaintiff has arthritis, bursitis, and impediment of both shoulders. Tr. 1233. Dr. Ghazi testified Plaintiff's pain limits her upper extremity functioning. Tr. 1238. Dr. Ghazi was not asked to provide any citations or further explanations beyond the diagnoses to support his opinion. *See* Tr. 1233-38. The medical records document waxing and waning of the severity of Plaintiff's upper extremity symptoms. Tr. 1205-06. The ALJ also did not incorporate Dr. Ghazi's opinion that Plaintiff is limited to two hours of standing/walking into the RFC. Tr.

ORDER - 14

1203, 1238.  Dr. Ghazi gave a thorough explanation for this limitation.  He stated

Plaintiff's knee osteoarthritis was "quite advanced," and her degenerative disc

disease has caused several disc issues where discs have become desiccated, and

after the knee replacement surgeries, Plaintiff's knees still were not functioning

normally due to her obesity.  Tr. 1233-35.  After surgery, Plaintiff had ongoing

periods of pain and swelling.  Tr. 1235.  While he could not cite to a specific

record that documented a prescription for a cane, he stated that based on his

experience, individuals with joint reconstruction and replacement with an artificial

component are supposed to use a walker, and then are promoted to cane.  Tr. 1236-

37.  For individuals who are obese, it is recommended they have ongoing use of a

cane to protect the artificial joints.  *Id.*  Dr. Ghazi opined that based on Plaintiff's

knee impairments, she is able to sit for six hours and stand/walk for two hours.  Tr.

1237.  Plaintiff was discharged with a walker after her surgeries.  Tr. 1201, 1711,

2274.  Plaintiff had a cane at multiple appointments in the record.  Tr. 1009, 1023,

2259, 2293, 2297, 2313, 2375.  The ALJ erred in finding Dr. Ghazi did not provide

adequate support for his opinion.

Second, the ALJ found Dr. Ghazi's opinion was inconsistent with the

medical evidence.  Tr. 1209.  An ALJ may discredit physicians' opinions that are

unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359

F.3d 1190, 1195 (9th Cir. 2004).  The ALJ found Dr. Ghazi's opinion that Plaintiff

ORDER - 15

is limited to standing/walking for two hours is inconsistent with the evidence, which does not consistently document gait or ambulation difficulties, focal neurologic deficits, nor documented need for an assistive device.  Tr. 1209.  As discussed *supra,* there are multiple references to Plaintiff using a walker after both surgeries and using a single point cane.  There are also numerous references to Plaintiff's impaired gait.  *See, e.g.,* Tr. 405, 479-80, 484, 524, 871-72, 885, 888, 890, 894, 1023, 1044, 1850, 1869, 1898, 1951, 2259, 2262, 2266, 2274, 2293, 2347.  The ALJ erred in finding Dr. Ghazi's opinion was inconsistent with the medical record.

Third, the ALJ found Dr. Ghazi relied in part on Plaintiff's body habitus in forming his opinion.  Tr. 1209.  Body habitus is not a factor in assessing an individuals RFC.  SSR 96-8p.  However, obesity, when established by objective medical evidence from an acceptable medical source, is a medically determinable impairment.  SSR 19-2p.  The functional limitations caused by obesity, either alone or in combination with another impairment, may medically equal a listing.  *Id.*  Obesity also may increase the severity or functional limitations of other impairments.  *Id.*  Obesity may impact exertional functioning, nonexertional functioning, manipulation abilities, and the ability to tolerate some environmental factors such as heat and humidity.  *Id.*  Obesity increases stress on weight-bearing

joints and may contribute to limitation of the range of motion of the skeletal spine and extremities.  *Id.*

Dr. Ghazi did not reference Plaintiff's body habitus, but rather explained how her obesity impacts her impairments, particularly her knee impairments.  Tr. 1233-39.  For example, he stated "obesity is a detriment to the longevity of the artificial joint.  So, I'm sure she's not achieving the optimum results that we surgeons anticipate to have after a knee replacement.  So, she has periodic pain and periodic swelling."  Tr. 1235.  The ALJ erred in rejecting Dr. Ghazi's opinion as based on Plaintiff's body habitus, when the opinion was based on Plaintiff's obesity.

The ALJ's analysis of the record is not supported by substantial evidence, and he thus did not reference specific evidence in the record that supports his rejection of Dr. Ghazis's opinion.  As such, the ALJ erred in rejecting Dr. Ghazi's opinion.

*2.  Other Medical Opinions*

The Court finds remand for immediate benefits based on the ALJ's improper rejection of Dr. Ghazi's opinion is appropriate.  Therefore, the Court declines to address the remaining medical opinions.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

ORDER - 17

**C. Other Challenges**

Plaintiff also contends the ALJ erred at step two and in evaluating Plaintiff's symptom claims.  ECF No. 12 at 5-14.  As the Court finds remand for immediate benefits is appropriate for the reasons discussed herein, the Court declines to address Plaintiff's additional grounds for remand.  *See Hiler*, 687 F.3d at 1212.  The Court notes that the ALJ's analysis of the record in rejecting Plaintiff's symptom claims is flawed in the same manner as his analysis of Dr. Ghazi's opinion.  The ALJ stated the medical records document "largely modest findings," and does not consistently document significant ambulation difficulties nor the use of an assistive device.  Tr. 1204.  As discussed *supra*, this analysis is not supported by the record.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits.  ECF No. 16 at 11.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

ORDER - 18

1  proper course, except in rare circumstances, is to remand to the agency for

2  additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

3  775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

4  cases, the Ninth Circuit has "stated or implied that it would be an abuse of

5  discretion for a district court not to remand for an award of benefits" when three

6  conditions are met.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)

7  (citations omitted).  Under the credit-as-true rule, where (1) the record has been

8  fully developed and further administrative proceedings would serve no useful

9  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

10 evidence, whether claimant testimony or medical opinion; and (3) if the improperly

11 discredited evidence were credited as true, the ALJ would be required to find the

12 claimant disabled on remand, the Court will remand for an award of benefits.

13 *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three

14 prongs have been satisfied, the Court will not remand for immediate payment of

15 benefits if "the record as a whole creates serious doubt that a claimant is, in fact,

16 disabled."  *Garrison*, 759 F.3d at 1021.  Here, the Court finds that each of the

17 credit-as-true factors is satisfied and that remand for the calculation and award of

18 benefits is warranted.

19     As to the first element, administrative proceedings are generally useful

20 where the record "has [not] been fully developed," *id.* at 1020, there is a need to

ORDER - 19

1  resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation

2  of further evidence . . . may well prove enlightening" in light of the passage of

3  time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002).  *Cf. Nguyen*, 100 F.3d at 1466-67

4  (remanding for ALJ to apply correct legal standard, to hear any additional

5  evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639,

6  642 (9th Cir. 1995) (same); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991)

7  (en banc) (same).

8      Defendant did not present an argument regarding a need for additional

9  proceedings should the case be remanded.  *See* ECF No. 15.  There are multiple

10  disabling records in the file, as well as Plaintiff's testimony at two hearings

11  regarding her disabling limitations, and the opinions and Plaintiff's testimony

12  provide support for a finding of disabling limitations from the alleged onset date

13  through the established onset date.  While Dr. Staley and Ms. Washington opined

14  Plaintiff is capable of light work, Tr. 121-22, 2007-08, which conflicts with Dr.

15  Ghazi's opinion, the ALJ has already been given two opportunities to reconcile

16  conflicts in the evidence and failed to provide an analysis supported by substantial

17  evidence.  Dr. Ghazi and Dr. Drenguis' opinions are consistent with sedentary

18  work, which are disabling limitations.  Ms. Washington also opined Plaintiff is

19  limited to sitting two hours at a time, for a total of seven hours; standing for ten

20  minutes at a time for a total of 30 minutes; and walking 10 minutes at a time for a

ORDER - 20

total of 30 minutes.  Tr. 2011.  Ms. Washington's second opinion is also consistent with sedentary work.  Ms. Washington opined the limitations have existed since April 24, 2014.  Tr. 2015.  Dr. Powers also opined Plaintiff has a disability, defined as an inability to engage in substantial gainful activity due to a medically determinable impairment that is expected to last at least 12 months.  Tr. 1523.  Plaintiff has already been found disabled from January 25, 2019 onward.  As such, further proceedings are not necessary.

As to the second prong, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, to reject Dr. Ghazi's opinion.  Therefore, the second prong of the credit-as-true rule is met.  The third prong of the rule is satisfied because if Dr. Ghazi's opinion was credited as true, the ALJ would be required to find Plaintiff disabled, as she would be disabled under the relevant grid rule, 201.14.

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled.  *Garrison*, 759 F.3d at 1021.  Plaintiff has not engaged in substantial gainful activity during the relevant period.  Tr. 1199.  Plaintiff has already been found disabled from January 25, 2019 onward.  There is evidence Plaintiff required a walker for periods during the relevant adjudicative period, and has used a cane, as well as a portable oxygen tank.

ORDER - 21

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted).  In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of Claimant's advanced age and "severe delay" of seven years in her application.  *Vasquez*, 572 F.3d at 593-94.  Plaintiff applied for benefits over eight years ago.  Plaintiff is now 59-years-old and has already been found disabled from January 25, 2019 onward.  The Court finds it is appropriate to remand for immediate benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

ORDER - 22

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 24, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 23